**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-23097-CIV-ALTONAGA/Goodman**

**IMPLANT SEMINARS, INC.**,

       Plaintiff,

v.

**SAMUEL SOON HO LEE** and
**INTERNATIONAL ACADEMY OF**
**DENTAL IMPLANTOLOGY, LLC**,

       Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Samuel Soon Ho Lee ("Dr. Lee")

and International Academy of Dental Implantology, LLC's ("International Academy['s]")'s

Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Join a Party,

or, Alternatively, Motion to Transfer Venue [ECF No. 60], filed March 27, 2019. Plaintiff, Implant

Seminars, Inc., filed an Opposition [ECF No. 61] on April 10, 2019, to which Defendants filed a

Reply [ECF No. 63] on April 17, 2019. The Court has carefully reviewed the parties' written

submissions, the First Amended Verified Complaint [ECF No. 26] ("Amended Complaint"), the

record, and applicable law.

## I.    BACKGROUND

### A. Factual Background

Plaintiff, a Florida corporation, owns interests in various marks ("IDIA Family of Marks")

and logos, in connection with dental implant services. (*See id.* ¶ 16). Plaintiff also offers courses

and seminars on dental implant procedure. (*See id.* ¶ 1).

Since 2010, Plaintiff has used its unique logos and marks, which have retained their general

content, style, and form. (*See id.* ¶¶ 18–26). As a result, the marks and logos have "achieved fame in the minds of the relevant public, namely providers of dental and periodontal services, and those who market [those services]." (*Id.* ¶ 30 (alteration added)).

Defendant Dr. Lee is a resident of San Diego, California, with his own private implantology practice in California. (*See id.* ¶ 11). Dr. Lee also offers educational services relating to dental implants and markets those services online. (*See id.*). Defendant International Academy is a now-dissolved California limited liability company, with Dr. Lee as its managing member, and organized under the laws of California. (*See id.* ¶ 12). Even though it dissolved in 2016, International Academy continues to run a website with Dr. Lee. (*See id.*).

In October 2011, Defendants created the International Academy of Dental Implantology Logo ("Infringing Logo") associated with their dental implant services. (*See id.* ¶ 32). Until 2015, Defendants did not use the Infringing Logo in their promotional materials, except as a profile picture on Facebook. (*See id.* ¶¶ 35–37).

In early 2015, Defendants started using the Infringing Logo on marketing materials. (*See id.* ¶ 38). Defendants also distributed items bearing the Infringing Logo to attendees of Dr. Lee's courses. (*See id.* ¶ 47). From 2016 through 2018, Defendants continued to use the Infringing Logo, expanding its use for services outside of California to other parts of the United States, including South Florida. (*See id.* ¶ 39).

The Infringing Logo is similar to the IDIA Family of Marks, incorporating the IDIA Family of Marks's original components. (*See id.* ¶ 43). As both parties offer dental implant educational services, they attract the same consumer base. (*See id.* ¶ 49).

Defendants' marketing materials have been distributed to Florida residents. In August 2018, Defendants arranged to have posted on Plaintiff's founder's Facebook page marketing

2

material, hoping to redirect Plaintiff's customers and interfere with Plaintiff's business relationships. (*See id.* ¶ 65). Plaintiff clarifies later, however, that Defendants' infringing conduct has harmed Plaintiff's business "in South Florida, the State of Florida, and the United States, *specifically, in the same market in which Defendant[s] seek[] to operate.*" (*Id.* ¶ 61 (alterations and emphasis added)). At a minimum, Plaintiff operates in the U.S. market, offering live courses in San Francisco, California; Miami, Florida; Washington D.C.; Chicago, Illinois; and New York, New York. (*See* Exhibit D [ECF No. 26] 69–70[1]).

In September 2018, Plaintiff filed the Amended Complaint, accusing Defendants of taking "purposeful steps to mislead practitioners, as well as the general public . . . with regard to the nature of Defendants' services and the source of origin of said services, as well as goods distributed by Defendants" bearing the Infringing Logo. (Am. Compl. ¶ 50 (alteration added)). Plaintiff alleges Defendants have used the Infringing Logo in their marketing materials on Facebook, YouTube, and on Defendants' website to deliberately confuse consumers. (*See id.* ¶¶ 41, 51).

In Count I, Plaintiff sues for trademark infringement under the Lanham Act, 15 U.S.C. section 1125(a). Plaintiff states Defendants have "engaged in infringement of the IDIA Family of Marks individually and in collusion with each other in the period 2016 through 2018." (*Id.* ¶ 72). According to Plaintiff, Defendants' "deliberate conduct" will "likely [] result in consumers obtaining the Defendants' services in mistaken belief that it [sic] originates from Plaintiff." (*Id.* ¶ 76 (alteration added)). Plaintiff asks for Defendants' profits arising out of Defendants' willful, malicious, and intentional conduct. (*See id.* ¶ 85).

In Count II, Plaintiff sues for trademark dilution under the Lanham Act, 15 U.S.C. section

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears on the headers of all court filings.

1125(c). (*See id.* ¶¶ 87–96). Count II is also based on Defendants' Infringing Logo (*see id.* ¶ 91) and alleges Defendants have used the Infringing Logo "knowingly and willfully" (*id.* ¶ 93).

In the remaining counts, Plaintiff asserts trademark and unfair competition claims under Florida law including: dilution under Florida Statute section 495.151 (Count III) (*see id.* ¶¶ 97–108); trademark and service mark infringement under Florida common law (Counts IV and V) (*see id.* ¶¶ 109–116; ¶¶ 117–123); unfair competition under Florida common law (Count VI) (*see id.* ¶¶ 124–131); unfair competition under Florida Statute sections 495.131 and 495.161 (Count VII) (*see id.* ¶¶ 132–139); and for an injunction (Count VIII) (*see id.* ¶¶ 140–145), which should be pled as a prayer for relief, rather than an independent claim for relief.

The Court does not need to venture too deeply into the state-law claims, as they are also based on the Infringing Logo Defendants used to market their services online. As relevant here, the following allegations inform the Court's forthcoming analysis:

- Plaintiff recognizes the harm to Plaintiff's business is pervasive "in Florida and *elsewhere worldwide*." (Count III) (*Id.* ¶ 100 (emphasis added)).

- Plaintiff notes its continuous use of its logo in "U.S. commerce, including within the state of Florida." (Counts IV and V) (*Id.* ¶¶ 111, 119).

- Plaintiff acknowledges that the "parties are competing in a similar pool for customers" and Defendants cause confusion by "making unauthorized use *in commerce* of the Infringing Marks." (Count VI) (*Id.* ¶¶ 126–127 (emphasis added)).

- Plaintiff seeks relief because Defendants' unauthorized, deliberate and willful use of Plaintiff's IDIA Family of Marks enables Defendants to compete unfairly by confusing "customers, potential customers, the continuing education travel, and dental industries, and the community at large, as to the origin and/or affiliation of Defendants' services . . . ."

(Count VII) (*Id.* ¶ 134 (alteration added)).

- Plaintiff seeks injunctive relief requiring Defendants "to engage in corrective advertising in publications directed to the dental services and dental continuing education industry throughout the United States, as well as on the Internet." (*Id.* 31).

**B. Procedural Background**

Now that the parties have completed extensive jurisdictional discovery, Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to join a party, or alternatively, to transfer venue. (*See generally* Mot.). Because a "transfer of venue in this case would obviate the need to reach" the other bases in Defendants' Motion, the Court only considers Defendants' venue argument. *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1285 (M.D. Ala. 2005) (alterations added). While it is common to resolve challenges to personal jurisdiction before addressing venue, "it is not required that courts do so" and courts may instead "address venue applications at the threshold . . . ." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (internal quotation marks and citation omitted; alteration added).

Here, the question of venue must be resolved because even if the Court exercised personal jurisdiction over Defendants, the Court would still transfer the case to the Southern District of California. The parties' findings during jurisdictional discovery only illuminate the nuanced personal jurisdiction analysis that would be required in this case. Judicial economy therefore supports the Court's approach here.

While the Court's disposition does not *rest* on the parties' jurisdictional discovery,[2] the

---

[2] The Court's disposition on venue would be the same with or without the benefit of the parties' jurisdictional discovery.

discovery does *inform* the Court's analysis. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (noting "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." (citations omitted)). Succinctly stated, the discovery reveals Defendants targeted Florida consumers, among other consumers; Dr. Lee participated in some seminars and conferences in Florida; and Defendants used a Florida distributor, Front Line Dental Supply, LLC, for some of their marketing efforts in Florida. (*See generally* Opp.). The discovery also reveals both Plaintiff's and Defendants' businesses target a global consumer base; and Defendants adopted the Infringing Logo in California, promoting and marketing their services bearing the Infringing Logo from San Diego. (*See generally* Mot.; Opp.; Reply).[3]

## II. LEGAL STANDARD

District courts may transfer a civil case to a different venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a) (alterations added); *see also Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011) (citations omitted). Courts have broad discretion under section 1404(a). *See England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (citation omitted).

As part of this inquiry, courts apply a two-prong test. *See Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952, at *2 (S.D. Fla. Jan. 15, 2015) (citations omitted). First, courts look to whether the case could have been brought in the other venue. *See id.* (citation omitted). Second, courts evaluate whether "convenience and the interest of justice require transfer." *Id.* (internal quotation marks and citation

---

[3] Notably, Plaintiff has not specifically requested to conduct discovery regarding venue. (*See generally* Opp.). Nevertheless, the parties' discovery as to personal jurisdiction was extensive, touching on issues relevant to the Court's venue analysis. But again, the Court *does not rely on any findings of fact* from the jurisdictional discovery. The Court, out of an abundance of caution, has simply reviewed the information exchanged in discovery to be assured Plaintiff benefits from a thorough review of the relevant issues raised in the parties' briefing of the Motion.

omitted). Under this second prong, courts "weigh various factors . . . ." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (alteration added; citation omitted). These private and public interest factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

## III. ANALYSIS

Applying this test, the Court first addresses whether the case could have been brought in the Southern District of California. The Court then analyzes whether transfer serves the convenience of the parties and the interests of justice. Because Defendants satisfy their burden on both prongs, transfer is required under section 1404(a). The principles compelling this conclusion are explained below.

### A. Whether the Action Could Have Been Brought in the Transferee Court

A case "might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum." *Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1272–73 (S.D. Fla. 2014) (citation omitted). All three requirements are satisfied.

First, the parties do not dispute subject matter jurisdiction exists. A federal court in San Diego would have subject matter jurisdiction over the case under 28 U.S.C. section 1321 (the Lanham Act); 28 U.S.C. section 1338(a) (actions arising under an Act of Congress relating to copyrights); 28 U.S.C. section 1331 (federal question); 28 U.S.C. section 1338 (patent, trademark

and copyright); and 28 U.S.C. section 1367 (supplemental jurisdiction). (*See* Am. Comp. ¶ 6).

Second, venue is proper in the Southern District of California under 28 U.S.C. section 1391(b)(1), as it is "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Dr. Lee lives in and operates his dental practice out of California. (*See* Am. Compl. ¶ 11). International Academy was a California limited liability company organized under the laws of California, dissolving in 2016. (*See id.* ¶ 12). Dr. Lee, a California citizen, was the managing member of International Academy. (*See id.*).

Venue is also proper in the Southern District of California under 28 U.S.C. section 1391(b)(2), because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* Defendants promoted their services using the Infringing Logo from online postings made in San Diego, and some consumer confusion allegedly occurred in San Diego. (*See* Am. Compl. ¶¶ 31–69). The Southern District of California is therefore a proper venue.

Third, the United States District Court for the Southern District of California can exercise personal jurisdiction over Defendants, who are California citizens. (*See id.* ¶¶ 11–12).

Because subject matter jurisdiction would exist over the case, venue would be proper, and Defendants would be amenable to service of process, Plaintiff's case could have been brought in the Southern District of California. The transferee court is thus an adequate alternative forum, and the Court must turn to the second prong of the section 1404(a) analysis. *See Rothschild Storage Retrieval Innovations, LLC v. LG Elecs., Inc.*, No. 14-cv-22654, 2015 WL 11233067, at *2 (S.D. Fla. June 3, 2015).

**B. The Convenience of the Parties and the Interests of Justice**[4]

*1. Locus of Operative Facts*

"The locus of operative facts is a primary factor in determining whether to transfer venue." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Taking Plaintiff's allegations as true, as well as all jurisdictional discovery materials supplied by the parties in the light most favorable to Plaintiff, the Court concludes the locus of operative facts factor weighs in favor of transfer.

Plaintiff alleges, and Defendants do not dispute, that Defendants, as part of their nationwide effort to attract consumers, advertised and distributed infringing services bearing the Infringing Logo in Florida. (*See* Am. Compl. ¶¶ 39, 65–67). Plaintiff also recognizes the bulk of Defendants' marketing activity was online, targeting a worldwide consumer base. (*See id.* ¶¶ 41, 54). The record also reveals Defendants designed and developed the Infringing Logo in San Diego, where they reside. (*See id.* ¶¶ 32, 38–39).

Importantly, Plaintiff provides no support for the proposition that "in-district sales of an allegedly infringing product, standing alone, require a finding that this district is the locus of operative facts despite sales in other districts." *CYI, Inc.*, 913 F. Supp. 2d at 21. Nor does Plaintiff allege (or assert) that a substantial fraction of Defendants' sales took place in the Southern District of Florida. (*See generally* Am. Compl.). In other words, while *some* of Defendants' sales and

---

[4] Plaintiff fails to adequately address Defendants' Motion to transfer the case under section 1404(a). In a single footnote, Plaintiff contends "transfer is not warranted because Defendants failed to discuss the public and private factors to be considered under Eleventh Circuit guidance." (Opp. 17 n.10 (citation omitted)). Not so. Defendants did analyze the public and private factors under section 1404(a). (*See* Mot. 18–19).

Plaintiff also makes the conclusory assertion that "the factors would not weigh in favor of transfer because they are either neutral or weigh in Plaintiff's favor and the only factor in Defendants' favor is their location in California." (Opp. 17 n.10 (citation omitted)). Plaintiff does not guide the Court in any other way as to venue, an issue Defendants placed squarely before the Court.

promotions — and by extension, some consumer confusion — occurred in the Southern District of Florida, that in and of itself does not render this District the locus of the operative facts. Indeed, Defendants posted the Infringing Logo online attracting consumers worldwide. (*See id.* ¶¶ 39–54).

Therefore, the Court looks elsewhere for the locus of operative facts. *See Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 411 (S.D.N.Y. 2017) ("The Court declines to find that the location of consumers favors New York where only a small fraction of consumers of the product at issue bought the product [sic] issue in, or are located in, New York."); *see also H.B. Sherman Mfg. Co. v. Rain Bird Nat. Sales Corp.*, 979 F. Supp. 627, 630 (N.D. Ill. 1997) ("Although the actual injury in a trademark infringement case occurs where the consumer is misled . . . here, the parties sell their products in similar markets nationwide. The fact that [the defendant] markets its products in the Northern District does not compel the parties to try the case here." (alterations added; citation omitted)).

Courts in this District have recognized that in trademark infringement cases, "the locus of operative facts . . . is often the headquarters of the allegedly infringing entity, where design and development . . . took place." *Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *8 (S.D. Fla. Oct. 16, 2017) (alterations added; citing cases). This is especially true in trademark infringement cases involving allegations of willfulness, where courts must look to "facts regarding the design and development of the accused products . . . and the knowledge of the employees involved in that process." *CYI, Inc.*, 913 F. Supp. 2d at 21 (alterations added).

Here, Defendants' Infringing Logo was developed and designed in the Southern District of California. (*See* Am. Compl. ¶ 32). Defendants marketed their services online from San Diego. (*See id.* ¶ 41; *see also* Mot. 19). Every claim in Plaintiff's Amended Complaint contains an

element of willfulness, requiring an analysis of Defendants' and their agents' intentions in adopting the Infringing Logo. (*See generally* Am. Compl.).

Because Defendants' infringing services underlying Plaintiff's state and federal trademark infringement claims "relate to unfair competition, misrepresentations, or intellectual property infringement on a widespread scale, the locus of operative facts is the location from which [Defendants] developed or created the allegedly unlawful content." *Blue Buffalo Co. Ltd. v. Nestle Purina PetCare Co.*, No. 3:14-CV-1665, 2015 WL 13625758, at *4 (D. Conn. Feb. 13, 2015) (alteration added; citations and footnote call number omitted)). The locus of operative facts factor therefore strongly favors transfer.

2. *Plaintiff's Choice of Forum*

Plaintiff is based out of this District and is deserving of deference in its choice of forum. Further, unlike with patent infringement, trademark infringement "only occurs once the allegedly infringing products are injected into the stream of commerce and a likelihood of confusion can be demonstrated," and thus a "plaintiff's forum choice [is] afforded some deference." *Par Pharm., Inc. v. Fleming & Co., Pharm.*, No. 09cv0001-LAB (JMA), 2009 WL 10672226, at *7 (S.D. Cal. Sept. 18, 2009) (internal quotation marks and citation omitted; alteration added).

While the Court affords Plaintiff's choice of forum this deference, the "operative facts underlying the cause[s] of action did not occur within the forum chosen by" Plaintiff, and thus "the choice of forum is entitled to 'less consideration.'" *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) (quoting *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (alteration added; other citations omitted)). Considering the "locus of operative facts" is in California, Plaintiff's choice of forum is entitled to some, although not considerable deference. *CYI, Inc.*, 913 F. Supp. 2d at 22

(concluding plaintiff's choice of forum is entitled to less weight based "in large part on the . . . analysis regarding the locus of operative facts . . . ." (alterations added)).

### 3. *Convenience of Witnesses and Compulsory Process*

"The convenience of the witnesses is best served when witnesses are allowed to testify in the forum where they reside." *Morrissey v. Subaru of Am., Inc.*, No. 1:15-cv-21106, 2015 WL 9583278, at *3 (S.D. Fla. Dec. 31, 2015) (citation omitted). Defendants and non-parties with knowledge of the design, development, marketing, and promotion of the Infringing Logo reside in San Diego. (*See generally* Am. Compl.). Dr. Lee's assistant, Glory Song, for example, resides in San Diego. (*See* Deposition of Glory Song [ECF No. 61-5] 5:13–14). Ms. Song prepared the names of Defendants' promotional email list, seminar attendance list, and list of individuals purchasing Defendants branded products. (*See id.* 62–68).

These facts support transfer to the Southern District of California. *See O-Line Acad., LLC v. NBC Universal, Inc.*, No. 1:16 CV 90, 2016 WL 2997587, at *2 (N.D. Ohio May 25, 2016) (concluding the Central District of California is the more convenient forum because defendants' employees who "worked on developing the allegedly infringing logo are based in the Central District of California."); *see also Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) ("In a trademark infringement action, the most critical witnesses may be those officers and employees who were involved in sale of the allegedly infringing products." (internal quotation marks, citation, and alterations in original omitted)).

While the Court ordinarily affords substantial weight to this factor, Defendants fail to provide names of *specific* non-party witnesses and their proposed testimony. (*See generally* Mot.; Reply). The Court also notes Defendants' former *Florida* distributor, Front Line Dental Supply, resides in Florida. (*See* Affidavit of Heidi Tandy [ECF No. 61-1] ¶¶ 12–14) ("Tandy Aff.").

Considering the totality of the circumstances, this factor only provides "modest support for transfer." *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1287 (S.D. Fla. 2012).

As to compulsory process, the Court cannot compel any unwilling witness residing outside of Florida to testify. *See Bell v. Kerzner Int'l Ltd.*, No. 10-23755-CIV, 2011 WL 12656691, at *9 (S.D. Fla. July 14, 2011), *aff'd*, 503 F. App'x 669 (11th Cir. 2012); *see also* Fed. R. Civ. P. 45(c)(1).[5] Again, based on Plaintiff's allegations, relevant non-party witnesses are likely California residents and are therefore beyond the Court's subpoena power.

That non-party witnesses in Florida might refuse to testify about consumer confusion, a material element of Plaintiff's claims, does not materially affect the analysis either. Consumers abound, and appear to be centrally located in California, where Dr. Lee offers most of his classes on dental implant procedure. (*See* Affidavit of Samuel Soon Ho Lee [ECF No. 60-1] ¶¶ 19–20; 58). *See AutomationDirect.com, Inc. v. Autotech Techs., L.P*, No. 1:05-CV-0961-CC, 2006 WL 8432135, at *8 (N.D. Ga. Jan. 12, 2006) (noting availability and cost of obtaining witnesses factor favors transfer where the "infringing catalog and a substantial part of the advertising at issue likely has reached more Illinois consumers than Georgia consumers, [and] there are likewise more non-party witnesses available in or around the Northern District of Illinois to testify regarding consumer confusion issues than there are in or around this District." (alteration added)).

Nevertheless, Defendants fail to supply names of specific non-party witnesses who would be unwilling to testify. Because of this deficiency, "this factor does not add much to Defendants' Motion." *Trafalgar Capital Specialized Inv. Fund*, 878 F. Supp. 2d at 1287 (citation omitted). In

---

[5] A federal court's subpoena power is geographically limited under Federal Rule of Civil Procedure 45(c).

short, the convenience of witnesses and compulsory process considerations only somewhat support transfer.

### 4. *Convenience of the Parties*

The Southern District of California is the most convenient forum for Defendants. Plaintiff, a Florida citizen, likely chose this forum because it is most convenient for it. As both parties will be required to "engage in similar cross-country travel" wherever this case is litigated, the parties are "in a relatively similar situation." *Advanced Aerodynamics, LLC v. Unmanned Cowboys, LLC*, No. 0:15-cv-62679, 2016 WL 8738383, at \*4 (S.D. Fla. May 31, 2016). This factor is thus neutral. *See id.*

### 5. *Location of Relevant Documents and Ease of Access to Sources of Proof*

Defendants note, and Plaintiff does not dispute, that the relevant documentary evidence is in California and none is in Florida. (*See* Mot. 19). But "[i]n a world with . . . copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764, at \*3 (S.D. Fla. Jan. 25, 2012) (alterations added). This factor somewhat favors transfer. *See Trafalgar Capital Specialized Inv. Fund*, 878 F. Supp. 2d at 1288 (affording ease of access to sources factor "minimal weight.").

### 6. *Relative Means of the Parties*

Both parties run businesses and appear ably positioned to litigate this case in either forum. (*See generally* Am. Compl.). Still, the parties have not extensively addressed their relative means to litigate this case, and "[n]ot much else is known regarding the parties' financial means and their respective abilities to conduct litigation in a distant forum." *Microspherix LLC*, 2012 WL 243764, at \*5 (alteration added). As the Court lacks information on the parties' means, this factor is neutral.

### 7. *Forum's Familiarity with Governing Law*

Plaintiff brings some claims under Florida law and others under federal trademark law. (*See* Am. Compl.). A federal judge in San Diego can apply federal trademark law just as competently as the undersigned, and while California federal judges may have less exposure to claims under Florida law than federal judges sitting in Florida do, the state claims here are inextricably linked to the federal trademark claims. This factor is either neutral or weighs somewhat against transfer. *See Trans Am. Worldwide, LLC v. JP Superior Sols., LLC*, No. 4:17cv560, 2018 WL 3090394, at \*10 (N.D. Fla. Apr. 30, 2018) (concluding forum's familiarity with governing law is neutral consideration because "district courts often have little trouble applying the law[s] of other states." (alteration added; citations omitted)); *see also CYI, Inc.*, 913 F. Supp. 2d at 26 (holding that where the plaintiff raised "numerous New York state law causes of action," the governing law factor "weighs against transfer, albeit not heavily." (citations omitted)).

### 8. *Trial Efficiency and Interests of Justice in Totality*

In weighing this factor, courts consider "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Rothschild Connected Devices Innovations, LLC*, 2016 WL 1546427, at \*7 (citation omitted). Both the Southern District of California and this District are "congested" forums, and so the Court turns to the center of the alleged claims.

The center of the alleged claims, related parties, and the community with the most interest in the matter is not the Southern District of Florida. Plaintiff wants a Florida jury to hear a case about infringing conduct — including the design and promotion — *most* of which occurred outside this District, and inside the Southern District of California. (*See generally* Am. Compl.). Again,

the only activities that took place in this District were the distribution of removal kits bearing the Infringing Logo, with a fraction of Florida consumers having been exposed to the Infringing Logo online; and Dr. Lee's participation in a few conferences and seminars. (*See generally* Tandy Aff.). Considering Defendants' nationwide sales practices, such connections to Florida are important, but do not change the conclusion the Southern District of California has a considerably stronger interest in this case. This final factor therefore weighs in favor of transfer.

## IV. CONCLUSION

Overall, multiple factors weigh in favor of transfer, with a remaining few cutting neither for nor against transfer or only slightly against transfer. Plaintiff's choice of forum is given some deference but the crucial factors — convenience of parties and witnesses and locus of operative facts — weigh in favor of transfer. Weighing the section 1404(a) public and private interest factors together, the Court concludes a transfer to the Southern District of California is most convenient and in the interests of justice. *See* 28 U.S.C. § 1404(a).[6]

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 60]** is **GRANTED in part**. The Clerk is instructed to **TRANSFER** this case to the United States District Court for the Southern District of California and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of May, 2019.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[6] Because transfer is appropriate under 28 U.S.C. section 1404(a), the Court does not reach the question whether venue is improper under 28 U.S.C. section 1406(a). *See Ponte Vedra Gifts & Accessories Co., LLC v. APL Logistics, Ltd.*, No. 3:15-cv-887, 2016 WL 2854207, at *5 n.5 (M.D. Fla. May 16, 2016).